# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

STEVE R. SPAIN, SR.,
                    *Plaintiff-Appellant,*

v.

MECKLENBURG COUNTY SCHOOL
BOARD,                                            No. 01-2282
                    *Defendant-Appellee.*

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
                    *Amicus Curiae.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-00-474)

Argued: October 29, 2002

Decided: December 23, 2002

Before WILKINSON, Chief Judge, and
WIDENER and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Carolyn P. Carpenter, CARPENTER LAW FIRM, Richmond, Virginia, for Appellant. Anne Noel Occhialino, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington,

D.C., for Amicus Curiae. Mary Ellen McGowan, SICILIANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia, for Appellee. **ON BRIEF:** Nicholas M. Inzeo, Acting Deputy General Counsel, Philip B. Sklover, Associate General Counsel, Carolyn L. Wheeler, Assistant General Counsel, EQUAL EMPLOYMENT OPPORTU- NITY COMMISSION, Washington, D.C., for Amicus Curiae.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Steve R. Spain, Sr. filed this suit against his former employer, the Mecklenburg County School Board, alleging that he was demoted from the position of Director of Special Education because of his gen- der in violation of the Civil Rights Act of 1964. Because the school district had a legitimate, nondiscriminatory reason for his reassign- ment and Spain did not offer any evidence of discriminatory intent, we affirm the district court's grant of summary judgment to the defen- dants.

I.

Plaintiff Steve Spain was employed by the Mecklenburg County School Board (the "Board") in various capacities as a teacher and administrator from August, 1966, until his retirement in March, 2000. In 1995, he was given the title of Director of Special Education, which he held until September, 1999, when he was reassigned to the position of Supervisor of Special Education. Spain alleges that this change in his employment was a discriminatory, gender-based demo- tion.

Spain began his employment with Mecklenburg County as an English teacher in 1966. In 1981, he moved into administration,

becoming the Coordinator of Regular and Special Services of the Department of Special Education. His job title changed a number of times in the ensuing years until he was given the title of Director of Special Education. Spain holds an Associate of Arts degree, a Bachelor of Arts degree in English, and a Masters degree in Administration and Supervision. However, he has no training in special education and no experience teaching in that area. Virginia state law requires that a Director of Special Education maintain a Virginia postgraduate professional license. Spain does not have the credentials to qualify for such a license, but he was granted an administrative waiver in 1992 by the Virginia Department of Education.

While Spain was director of the Special Education Department, the U.S. Department of Education, Office of Civil Rights (OCR) investigated the department for allegations of ability grouping and racial disproportionality in special education. This investigation began in 1994 and concluded in 1998 with the OCR encouraging the department to increase minority student participation in college preparatory classes and to combat disproportionality in class assignments. On June 6, 1997, a separate complaint was filed with the OCR regarding discrimination in the department. Specifically, the complaint alleged that African-American students were disproportionately assigned to special education curricula. After reviewing this complaint, the OCR concluded that there was a disproportionate assignment of African-American students to special education curricula and a failure to place African-American students in available accelerated programs in the county.

In July, 1998, Rebecca Perry was appointed Superintendent of the Mecklenburg County School System. Shortly after her appointment, the school district entered into a formal Commitment to Resolve with the OCR to address its disproportionality issues and bring the district into compliance with state and federal regulations. As part of Perry's mandate to address these problems and modernize the administration, Perry set new goals for herself and other central office personnel. These goals included revising outdated job descriptions and developing clear lines of responsibility within the central office. Around this time, Spain alleges that Perry convened a meeting of central office personnel during which she discussed her plans for improvement of the school district. Spain contends that during this meeting, Perry

stated that she had a preference for female administrators because they are more organized than men.

In the summer of 1999, Perry hired Larry Farmer as the Assistant Superintendent of Instruction to help her orchestrate the administrative reorganization. During his initial review of the special education department, Farmer noted an "inordinate concentration of kids in self-contained classrooms" and a high percentage of minority children in special education. In the middle of September, 1999, Farmer met with Perry and suggested a change in leadership for the department. He recommended Cecelia Coleman for the position of Director of Special Education because he felt that her credentials gave her the ability to lead the department in the right direction.

Coleman holds a Bachelor of Science degree in Special Education and a Masters of Education degree in Preschool Handicapped Education. She also has certifications for the teaching of special education students. Coleman taught special education classes from 1976 until 1994, receiving the Virginia Teacher of the Year Award in 1987. Since 1994, she has held a high-ranking administrative position in the Mecklenburg County Special Education Department.

In late September, 1999, Farmer informed Spain that Cecelia Coleman would be the new Director of Special Education and that Spain would be reassigned to the position of Supervisor of Special Education. Farmer told Spain that the reason for the reassignment was that "Perry preferred Coleman in the position of Special Education Director." Both Coleman and Spain received new job descriptions that contained some of their old tasks as well as several new tasks. Upon being reassigned to the position of Supervisor, Spain complained to Farmer and Perry about having to supervise teachers rather than administrative staff and about the increased workload. He asked for additional compensation, which was denied.

Spain's employment with Mecklenburg County Schools was governed by an "Annual Contract with Professional Personnel," initially entered into in February, 1972, when Spain was hired as a principal. This contract expressly provided that the Superintendent had the authority to transfer any teacher or principal to a different school, provided that no change was made to his salary. Additionally, school

board policy allows for employee reassignment "for that school year to any school or facility within such division, provided no change or reassignment during a school year shall affect the salary of such employee for that school year." Virginia code § 22.1-297 contains a virtually identical provision.

Spain does not deny Perry's authority to reassign personnel, but alleges that the action taken by the Board was a demotion motivated by gender discrimination. On February 18, 2000, Spain submitted a letter to the Board stating that he intended to end his employment by the Board, and on February 26, he submitted another letter detailing the reasons for his decision. Spain officially retired from the Mecklenburg County School System on March 1, 2000.

On February 28, 2000, Spain filed a charge of discrimination with the EEOC. Two months later, the EEOC closed its investigation, declaring that it was "unable to conclude that the information obtained establishes violations of the statutes." Spain then filed the present complaint, alleging that he was demoted in violation of 42 U.S.C. § 2000(e). Spain's amended complaint also includes a due process claim under 42 U.S.C. § 1983 and a pendent state claim for breach of contract. Spain seeks injunctive relief in the form of a return to his former position, as well as compensatory damages and attorneys' fees.

On June 15, 2001, the district court referred the Board's motion for summary judgment to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A). On July 31, 2001, the magistrate filed a report recommending that summary judgment be granted. The magistrate found that Spain did not suffer an adverse employment action because (1) the reassignment did not represent a significant change in his responsibilities; (2) there was no evidence establishing that the position of Supervisor was necessarily inferior to the position of Director; (3) Spain's duties had been expanded, not diminished, by the reassignment; and (4) Spain's salary and benefits remained the same. The court also found that Spain's employment contract, Board policy, and state law allowed his reassignment to the position of Supervisor. Spain objected. On September 21, 2001, the district court denied this objection and granted the Board's summary judgment motion without issuing a separate opinion, dismissing

Spain's claim with prejudice. The court also dismissed Spain's breach of contract and due process claims. Spain appeals as to the Title VII claim.

## II.

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual" or to discriminate "with respect to his compensation, terms, conditions, or privileges of employment" because of an individual's gender. 42 U.S.C. § 2000e-2. Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *McDonnell Douglas*). To satisfy this burden, a plaintiff is required to plead facts sufficient to create an inference that an adverse employment decision was based on impermissible considerations. This may be done by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was otherwise qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the action took place under conditions establishing an inference of discrimination. *Id.* Although the district court granted summary judgment on the basis that Spain suffered no adverse employment action, we find it unnecessary to reach this question. We will assume for the purposes of appeal that Spain provided sufficient facts to create a prima facie case.

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action. *Reeves*, 530 U.S. at 142. However, this burden "is one of production, not persuasion." *Id.* The responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Thus, it is not enough for a plaintiff merely to raise an inference of discrimination. Rather, a plaintiff bears the ultimate burden of proving that the decision was made not

on any proffered grounds but instead on the basis of impermissible discriminatory grounds. *Reeves*, 530 U.S. at 143.

The Board contends that the reason for the reassignment was clear: Perry and the Board wished to change the direction and leadership of the department to address OCR's complaints, and Coleman was better qualified for the leadership position. Coleman has extensive credentials in special education, including a postgraduate professional license as supervisor of special education. Spain has no training in the area and is not qualified to hold the position of Director of Special Education without an administrative waiver. Additionally, Spain's reassignment was part of a larger reorganization undertaken by Perry and Farmer designed to ultimately "set higher goals with students, and improv[e] student achievement."

Because the Board has advanced a legitimate, nondiscriminatory reason for the employment decision, the burden shifts back to Spain to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (internal citation omitted). The ultimate burden rests at all times with the plaintiff. Spain must therefore show that the Board's proffered explanation "is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Spain's sole evidence of discriminatory intent is a purported comment by Perry that she prefers female administrators because they are better organized than men. But this general comment in no way suggests that the Board's proffered explanation for the decision is a pretext for discrimination. The reason that Farmer gave to Spain for his reassignment, that "Perry preferred Coleman in the position of Special Education Director," was likewise neutral. Spain provided no evidence at all that the reorganization itself was pretextual. In fact, during the reorganization Perry hired twenty-four new administrators, fourteen of whom were men. Thus, the Board has provided strong evidence that tends to rebut any inference that Perry only hired or strongly preferred female administrators.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. To

overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Spain, however, relies on little more than bald or inapposite accusations to satisfy his burden. Where, as here, "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision" a court is correct to conclude that there is no triable issue of fact. *Reeves*, 530 U.S. at 148. Therefore, summary judgment in this case is appropriate and the judgment of the district court is

*AFFIRMED*.